IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DKT INTERNATIONAL, INC.<br>1701 K Street, NW, Suite 900,<br>Washington, DC 20006<br>     **Plaintiff,**<br><br>  v.<br><br>UNITED STATES AGENCY FOR<br>INTERNATIONAL DEVELOPMENT<br> Ronald Reagan Building<br> Washington, D.C. 20523-0016<br><br>-and-<br><br>ANDREW S. NATSIOS, in his<br>Official Capacity as ADMINISTRATOR,<br>U.S. AGENCY FOR INTERNATIONAL<br>DEVELOPMENT.<br>     **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  **Civil Action Case No.**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

**COMES NOW** Plaintiff DKT International, Inc. and files this Complaint against the United States Agency for International Development, and its Administrator, and alleges as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this civil rights action seeking declaratory and injunctive relief to protect Plaintiff's First Amendment right to freedom of speech. Plaintiff challenges the constitutionality of the United States Agency for International Development's ("USAID") enforcement of United States Leadership Against HIV/AIDS, Tuberculosis, and Malaria Act of

2003 ("Global AIDS Act"), 22 U.S.C.A. § 7601 *et seq.*, a law that conditions an organization's eligibility for USAID funding upon that organization declaring its adherence to a particular government policy. Plaintiff also challenges USAID's Acquisition & Assistance Policy Directive 05-04, the implementing regulations issued by the Director of the Office of Acquisition & Assistance on June 9, 2005. These regulations are unconstitutional on their face because they make otherwise eligible organizations ineligible for USAID grants or contracts if they do not expressly adopt the government's policy on prostitution.

## JURISDICTION AND VENUE

2. This case arises under the First Amendment to the United States Constitution This Court has jurisdiction over the Plaintiff's federal constitutional claims under 28 U.S.C. § 1331.

3. Venue is proper in this District under 28 U.S.C. § 1391 because USAID is a U.S. Government agency with its principal place of business in this District.

## PARTIES

4. Plaintiff DKT International is a not-for-profit corporation with headquarters at 1701 K Street, NW, Suite 900, Washington DC 20006. As one of the largest providers of family-planning and HIV/AIDS services, DKT International provides family planning and HIV/AIDS prevention programming in Brazil, China, Egypt, Ethiopia, India, Indonesia, Malaysia, Mexico, Philippines, Sudan, and Vietnam. DKT's programs currently serve just under 10 million couples. It has been eligible for, and has received USAID funds for HIV/AIDS prevention programs.

5. Defendant USAID is a U.S. Government Agency with headquarters at the Ronald Reagan Building, Washington, D.C. 20523-0016.

6. Defendant Andrew S. Natsios is the Administrator of USAID. He is sued in his official capacity.

## FACTUAL BACKGROUND

### The Legal Context

7. In 2003, President Bush signed the United States Leadership Against HIV/AIDS, Tuberculosis, and Malaria Act of 2003 ("Global AIDS Act"), 22 U.S.C.A. § 7601 *et seq.* into law. The Act contains two restrictions regarding prostitution. The first restriction, 22 U.S.C.A. § 7631(e), prohibits the use of U.S. Government funds under the Act from being spent on activities that "promote or advocate the legalization or practice of prostitution or sex trafficking." The second restriction provides, "no funds made available to carry out this Act may be used to provide assistance to any group or organization that does not have a policy explicitly opposing prostitution and sex trafficking." 22 U.S.C.A. § 7631(f). The legislation exempts the Global Fund to Fight AIDS, Tuberculosis and Malaria, the World Health Organization, the International AID Vaccine Initiative and United Nations agencies.

8. Responding to a request from the Department of Health and Human Services, the Department of Justice concluded in early 2004 that the provisions of 22 U.S.C.A. § 7631(f) could constitutionally be applied only to foreign organizations operating overseas in view of First Amendment considerations. In September 2004, the Department of Justice reversed itself. In the second opinion letter, the Department of Justice concluded, "...[I]n these circumstances, given that the provisions do not raise separation of powers concerns and that there are reasonable arguments to support their constitutionality, we believe that HHS may implement these provisions."

9.  On June 9, 2005, USAID released an Acquisition & Assistance Policy Directive (AAPD), titled "AAPD 05-04 Implementation of the United States Leadership Against HIV/AIDS, Tuberculosis and Malaria Act of 2003 -- Eligibility Limitation on the Use of Funds and Opposition to Prostitution and Sex Trafficking." This policy "now appl[ies] to U.S. organizations as well as foreign organization," and "require(s) recipients to agree that they oppose prostitution and sex trafficking." The AAPD 05-04 provided clauses "to be included as new standard provisions for assistance agreements and contracts that include HIV/AIDS funds." In particular, AAPD 05-04 requires the following provision:

> as a condition of entering into this agreement or any subagreement, a non-governmental organization or public international organization recipient/subrecipient must have a policy explicitly opposing prostitution and sex trafficking.

A copy of AAPD 05-04 is attached as Exhibit A.

### DKT International's Work in Vietnam And USAID Funds

10.  Plaintiff DKT International is a U.S.-based, charitable organization providing family-planning and HIV/AIDS prevention services in eleven countries around the world. DKT's social marketing makes products and services affordable to poor populations by subsidizing the price and by making effective use of marketing techniques and private sector networks to deliver products and services. DKT International also regularly shares its observations, information, research, and conclusions relating to its work with the public at large in the United States, as well as with other non-governmental organizations through articles published in relevant journals, books, and on its website.

11. Since 1993, DKT International has conducted innovative anti-HIV/AIDS and family planning social marketing programs in Vietnam, distributing over four hundred million condoms throughout Vietnam's sixty-four provinces.

12. DKT International receives funds from multiple donors around the world for its anti-HIV/AIDS work -- including other government donors, such as Australia, Germany, and the United Kingdom. In addition, it receives USAID funding for anti-HIV/AIDS work, often through a subgrant of USAID funds from other direct grantees of USAID.

13. DKT International's office in Vietnam has been implementing the "100% Condom Access" project, with USAID funds under the IMPACT project (Implementing AIDS Prevention and Care Project) since 1998. Another non-governmental agency, Family Health International, ("FHI") was the direct grantee from USAID. With USAID's permission, FHI gave USAID subgrants to DKT International. The IMPACT project involves targeted AIDS prevention social marketing activities in six of the most high-risk provinces in Vietnam. On July 1, 2003, DKT International was awarded another Cooperative Agreement (#IMPACT HRN-A-00-97-00017-00), a $499,225 two-year grant to continue its work under the IMPACT program

14. On June 27, 2005, FHI notified DKT International's Vietnam Country Representative that FHI had received permission from USAID to fund a condom-lubricant proposal DKT International had submitted to FHI and USAID several months earlier. On June 28, 2005, FHI further informed DKT International that it would provide DKT with $60,000 in USAID funds to undertake that proposal.

15. On June 27, 2005, the DKT International Country Representative in Vietnam also received from the FHI Vietnam Country Director in Hanoi an already executed no-cost, two-

month extension to the existing IMPACT funding agreement. The extension amendment, signed by the FHI Country Director, allowed DKT International to continue using unspent grant funds for two months beyond the original authorized period of performance, which ended on June 30, 2005. As of July 7, 2005, approximately $57,000 of the original grant remained unspent.

16. The extension amendment included a set of attachments. The DKT International Country Representative signed the agreement, but immediately voided his signature when he discovered that FHI and USAID required him to certify that "DKT International hereby certifies that it has a policy explicitly opposing prostitution and sex trafficking." The amendment further provided, "This certification is an express term and condition of the agreement and any violation of it shall be grounds for unilateral termination of the agreement by FHI or USAID prior to the end of its term."

17. USAID's Acquisition and Assistance Policy Directive (AAPD) 05-04 required FHI to require its subgrantee, DKT International, to certify that it has a policy opposing prostitution.

## DKT International's Refusal to Sign the Certification

18. The DKT International Country Representative refused to sign the certification that accompanied the no-cost extension documents and promptly requested a waiver.

19. On July 5, 2005, the DKT International Country Representative received a denial of that request. The FHI County Director stated:

> I have confirmed that FHI will not be able to execute the no-cost extension unless DKT is able to sign the anti-prostitution statement. Furthermore, we would not be able to support DKT for any activities with USAID funds if this is not signed. Please discuss with DKT management if there is any flexibility on this and let me know.

20.   On July 13, 2005, FHI reversed itself on the no-cost extension issue. It notified DKT that the no-cost extension amendment could go forward without the certification because "the funds for DKT's sub-agreement with FHI originated prior to the application of the USAID guidance on anti-prostitution."

21.   The refusal to provide new USAID funding, however, remained firmly in place. FHI cancelled the earlier-promised $60,000 USAID grant for packaging of lubricants and condoms in Vietnam because DKT refused to sign the USAID-required certification. The FHI Country Director informed DKT that "it will not be possible for FHI to fund DKT to carry out this work." FHI then referred to the required certifications, and noted, "You have indicated that DKT declines to sign the certification form provided to you to [with those certifications]. The FHI policy and certification requirement is in compliance with FHI's Agreement with USAID, including USAID Acquisition and Assistance Policy Directive 05-04 issued June 9, 2005. Thus, FHI is unable to provide additional funding to DKT."

22.   In addition, USAID representative Dan Levitt told DKT's Vietnam Country Representative that DKT would be ineligible for USAID funding unless it certified that it had a policy explicitly opposing prostitution.

### The Impact of the Certification Requirement on DKT International

23.   DKT has no policy on prostitution and does not wish to adopt one. It believes it has a First Amendment right not to do so. In addition, as an organization working to prevent the spread of HIV/AIDS, it strongly believes it can best do that in the many countries in which it works by maintaining neutrality on the controversial question of how to handle the complex problems that arise at the intersection of the HIV/AIDS epidemic and prostitution.

24. In addition, if DKT were to adopt the government-prescribed policy to be eligible to receive USAID funding, the policy would then require it to restrict its own speech, outside of its work with USAID funds, to speech consistent with that policy. Thus, the USAID-required policy would restrict even speech and activities paid for with private and non-U.S.-government funds.

25. As a result of the statute and the USAID requirement, DKT has been penalized for exercising its First Amendment right not to speak by losing the already-agreed-upon USAID funding of $60,000 for the condom-lubricant proposal in Vietnam.

26. As a result of the statute and the USAID requirement, DKT has also been penalized for exercising its First Amendment right not to speak by being excluded from eligibility for all future USAID grant funds. DKT International has previously been eligible to receive USAID funds, and has received them. Indeed, USAID funding represents approximately 16% of DKT International's funding worldwide. DKT International intends to continue to provide HIV/AIDS prevention programming of the sort that has been eligible for USAID funding and is ready, willing, and able to apply for such funding, for which it would be eligible if not for USAID's certification requirement.

27. In addition, the statute and regulation, which condition eligibility for USAID grants on adopting a policy "explicitly opposing prostitution," are vague because DKT cannot reasonably predict whether its other speech and activities (funded by private donors and other governments) might be deemed by USAID to insufficiently oppose prostitution. And the consequences for predicting wrongly are potentially significant: organizations who are found to have violated their agreements by not having an adequate policy (or not adhering to it) may be required to repay in full an already-spent grant. Further consequences, such as debarment or false claims actions are also not beyond the realm of possibility.

28. The statutory and regulatory provisions requiring that DKT not use USAID funds to "promote the . . . practice of prostitution," 22 U.S.C. § 7631(e), and USAID AAPD 05-04 are also unconstitutionally vague because DKT cannot predict how USAID will interpret that phrase. Especially in the context of HIV/AIDS services provided to sex workers, virtually any assistance provided to a sex worker might be construed to "promote" the sex worker's "practice." And while some activities have been excluded by the statute, such as "palliative care, treatment, post-exposure pharmaceutical prophylaxis, and necessary pharmaceuticals and commodities, including test kits, condoms, and, when proven effective, microbicides," 22 U.S.C. § 7631(e), reasonable people could easily disagree on whether a range of other activities would promote the practice of prostitution. Given the significant penalties that accompany guessing wrong on how USAID will construe the language, the statute and regulation will unconstitutionally chill protected speech.

29. Because DKT International receives funds from multiple donors around the world, the adoption of the U.S.-government compelled organization-wide policy opposing prostitution is not limited to programs implemented with U.S. government funds. Instead, the compelled adoption of such a policy would restrict DKT International's ability to carry out programs funded entirely by non-U.S. government donors, including private, governmental, and international organizations.

## CAUSES OF ACTION

### COUNT I

30. Plaintiff re-alleges and incorporates herein by reference the allegations of paragraphs 1-29 above.

31. The Act and USAID violate the First Amendment to the United States Constitution because they condition eligibility for USAID funding for U.S. organizations on expressly adopting the U.S. government's political viewpoint on prostitution.

32. The Act and USAID regulations compel speech in violation of the First Amendment of the United States Constitution and in violation of the Administrative Procedures Act, 5 U.S.C. §§ 551 et seq..

### COUNT II

33. Plaintiff re-alleges and incorporates herein by reference the allegations of paragraphs 1-32 above.

34. The Act and the USAID regulations restrict and burden constitutionally-protected expression of U.S. organizations that is supported exclusively by private, international, or other

donor funds in violation of the First Amendment of the United States Constitution and the Administrative Procedures Act, 5 U.S.C. §§ 551 et seq.

## COUNT III

35. Plaintiff re-alleges and incorporates herein by reference the allegations of paragraphs 1-34 above.

36. The Act and USAID regulations are unconstitutionally vague, in violation of the First Amendment of the United States Constitution and the Administrative Procedures Act, 5 U.S.C. §§ 551 et seq.

## RELIEF REQUESTED

WHEREFORE, the Plaintiff respectfully requests that this Court:

A) Declare that 22 U.S.C.A. §§ 7631(e) and (f) of the Global AIDS Act are unconstitutional to the extent they require U.S. organizations to have a policy explicitly opposing prostitution;

B) Declare that the USAID Implementing Regulations, codified at AAPD 05-04 are unconstitutional to the extent that they requires U.S. organizations to have a policy explicitly opposing prostitution;

C) Permanently enjoin defendants from enforcing those provisions;

D) Order USAID to instruct Family Health International that USAID authorizes FHI to disburse the $60,000 grant for the Vietnam condom-lubricant proposal;

E) Award Plaintiff such costs and fees as are allowed by law; and

F) Grant Plaintiff such other and further relief as this Court deems equitable, just, and proper.

Respectfully submitted,
DKT INTERNATIONAL, INC.

By *[signature]*
One of Plaintiff's Attorneys

Julie M. Carpenter
   D.C. Bar No. 418768
Martina E. Vandenberg
   D.C. Bar No. 476685
JENNER & BLOCK, LLP
601 13th Street, N.W.
Washington, DC 20005
(202) 639-6000


OF COUNSEL
David S. Udell*
Rebekah Diller*
Laura K. Abel*
Brennan Center for Justice at NYU School of Law
161 Ave. of the Americas
12th Floor
New York, NY 10013

* Not admitted in the District of Columbia

## CERTIFICATE OF SERVICE

The undersigned certifies that on the ___11 day of August 2005, a true and correct copy of the foregoing document was delivered via hand delivery to:

Daniel Van Horn
Office of the United States Attorney, Civil Division
501 3rd Street, NW
Washington, DC 20001

and by certified mail to:

Andrew S. Natsios
Administrator
U.S. Agency for International Development
1300 Pennsylvania Ave, NW
Room 6.09
Washington, DC 20523

John S. Gardner
Office of General Counsel
U.S. Agency for International Development
1300 Pennsylvania Ave, NW
Room 6.06
Washington, DC 20523

The Hon. Alberto R. Gonzales
Attorney General of the United States
Department of Justice
Room 4400
950 Pennsylvania Ave, NW
Washington, DC 20530-0001

_____
Julie M. Carpenter