IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DKT INTERNATIONAL, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action Case No. |
| | ) |
| | ) |
| UNITED STATES AGENCY FOR | ) |
| INTERNATIONAL DEVELOPMENT, | ) |
| *et al.* | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

## DECLARATION OF DR. CAROL JENKINS

1. I have served as a consultant on HIV/AIDS programs in twenty-five countries around the world. My clients have included the World Bank, the Asian Development Bank, Population Services International, DKT International, Family Health International, CARE International, John Snow International, the Futures Group (SOMARC, Policy Project), Pathfinder, USAID, the British Department for International Development, AusAID, Liverpool Associates in Tropical Health, PATH, UNAIDS, UNFPA, UNICEF, WHO, UNDP, UNODC, and various non-governmental organizations working, among other things, to stop the spread of HIV/AIDS in various countries overseas. I have designed the regional HIV strategies for USAID's Mekong Region, for Asian Development Bank's forty-four-country Asian Region, for

ADB's twenty-two-country Pacific Region and for the World Bank's Middle East-North Africa Region, as well as numerous country-level strategies for these donors.

2. I have served as a consultant for fifteen years. After completing my doctorate in medical anthropology at the University of Tennessee, Knoxville, I worked as an assistant professor at several universities. I taught at Illinois State University, University of Pennsylvania, and Temple University. I also served as Principal Research Fellow at the Papua New Guinea Institute of Medical Research; as the Head of Social and Behavioral Sciences Division of the International Center for Diarrhoeal Disease Research, Bangladesh; as the Health and Population Sector Head for CARE Bangladesh; as the Resident Advisor for Family Health International in Bangladesh; as the Head of National Behavioral Surveillance in Bangladesh; as a Senior Scientist for Social and Behavioral HIV Prevention Research for the Division of AIDS of the National Institutes of Health; and most recently as the USAID Regional Advisor for Asia and the Near East (ANE).

3. I have published widely in the field of HIV and AIDS. My most recent publications include:

| | |
|---|---|
| 2005 | Sex Workers and Police in Port Moresby (1994-1998): Research and Intervention. In: Luker, V., Dinnen, S., and Patience, A. (eds.) **Law, Order and HIV/AIDS in PNG**. Canberra: Australian National University Press (forthcoming) |
| 2003 | Loff, B., Jenkins, C., Ditmore, M., Overs, C. and Barbero. R. Correspondence, **The Lancet**. May 7, 365:1618-1619, 2005 |
| 2005 | Cambodian Sex Workers Conduct Their Own Research. **Research for Sex Work** Issue 8: 3-4. June 2005 |
| 2005 | Jenkins, C. *Ethnicity, Drugs and Sex*, chapter in Aggleton, P., Mane, P. and Ball, A. (eds.), **Youth, Sex and Drugs**. Routledge Press (forthcoming) |
| 2004 | Jenkins, C. *HIV/AIDS and Culture: Implications for Policy*. In: Vijayendra Rao and Michael Walton (eds.), **Culture and Public Action: A Cross-Disciplinary Dialogue on Development Policy**. Stanford Univ. Press. |

| | |
|---|---|
| 2003 | Jenkins, C. and Robalino, D. **HIV/AIDS in the Middle East and North Africa: The Costs of Inaction**. Washington, DC: World Bank. |
| 2002 | Jenkins, C. and Rahman, H. *Rapidly changing conditions in the brothels of Bangladesh: Impact on HIV/STD related behaviours*. **AIDS Education and Prevention,** 14 Suppl A:97-106. |
| 2001 | Jenkins, C., Jana, S., Saidel, T. and Rahman, H. *Measuring impact with behavioral surveillance among injecting drug users in Bangladesh* **AIDS Education and Prevention**, 13 (5): 452-461. |
| 2001 | Jenkins, C. Commentary. *Half the sky: Investing in HIV prevention and care.* **Culture, Health and Sexuality**, 3 (4):483-489. |
| 2001 | Ghys, P.D., Jenkins, C. and Pisani, E. *HIV surveillance among female sex workers.* **AIDS** 15 (suppl 3):S33-S40. |
| 2001 | Guidelines for Conducting HIV Behavioural Surveillance. WHO/SEARO, SEA-AIDS 123, 2001. |
| 2000 | Govt. of Bangladesh (written by C. Jenkins). **Report on the Second Expanded HIV Surveillance, 1999-2000, Bangladesh**, GoB/UNAIDS. |
| 2000 | Jenkins, C. **Female Sex Worker HIV Prevention Projects: Lessons Learnt from Papua New Guinea, India and Bangladesh**, UNAIDS Case Study, UNAIDS, Geneva. |
| 2000 | Azim, T., Bogaerts, J., Mian, M., Islam, M., Sarker, M., Fatteh, K., Simmonds, P., Jenkins, C., Chowdhury, M. R., and Mathan, V.I. *Prevalence of HIV and syphilis among high risk groups in Bangladesh.* **AIDS** 14(2)210-211. |

4. In my capacity as a consultant, I have provided advice, guidance, and management for dozens of organizations' HIV/AIDS prevention programs. For example, I provided consulting services for the PSI Targeted Outreach Program in Myanmar. As part of the program, drop-in centers provide educational activities, sexually transmitted infection (STI) treatment, voluntary counseling and testing (VCT), and support for HIV-positive people among female and male sex workers. I also aided the SHAKTI Project in CARE, Bangladesh in which brothel and street-based sex workers have gradually learned to run their own AIDS prevention programs. The program has resulted in a massive drop in syphilis rates and rising levels of

condom use, with HIV contained at the remarkably low level of 1-2 percent over seven years. I was the designer and executive manager for the TRANSEX Project in Papua New Guinea, a program that included components for sex workers, police, security men, truckers, sailors and dockworkers. Some of these programs received funding in whole or in part from USAID. Others are funded by private donors. Still others are funded by foreign government donors and multilateral institutions.

5. Recently, I have become aware that USAID is requiring that private consultants like myself certify that we have a policy "opposing prostitution and sex-trafficking" as a condition of receiving USAID grant funds, even to continue funding for on-going projects. This mandated policy necessarily applies to all of my consulting work, irrespective of whether the source of funds for a particular project is the U.S. government or a private donor.

6. I join in the universal condemnation of sex-trafficking.

7. I have never had a policy on prostitution in the past. As an international public health consultant, I have refrained from adopting policies on particular political issues. Especially since I operate in a variety of countries and often provide consulting services to organizations working with clients from multiple cultures and backgrounds, I have made every effort to remain neutral on matters of political conflict.

8. I have refused to sign the certification. I do not wish to adopt a policy on prostitution, and believe that to do so would be harmful both to my right to free expression and to all of my anti-HIV/AIDS consulting work. The U.S. government has attempted to compel me to adopt a policy as a condition of being eligible to obtain new USAID funds for my HIV/AIDS program consultancies. I have declined additional funding rather than sign the certification.

9. The USAID policy would not only compel me to speak the government's words, but it would also require me to limit my *private*, non-federally-funded speech and activities. While USAID funded-projects have comprised about 50 percent of my portfolio for consulting projects on HIV/AIDS, all of my work would now be subject to the policy mandate. Thus, if I were to accept USAID's condition, I would be forced to ensure that even my non-USAID-funded work conformed to what would be a mandate for all of my consulting work.

10. Finally, if I were to sign USAID's certification, I would no longer have the right to freely engage in debate about significant matters of public health that may relate to prostitution, *even when that debate is funded by wholly private funds*. For example, I have published multiple articles and books, including **Female Sex Worker HIV Prevention Projects: Lessons Learnt from Papua New Guinea, India and Bangladesh**, a UNAIDS Case Study published by UNAIDS, Geneva. If I signed the certification, I would be forced to censor all of my privately-funded research and publications for fear of running afoul of the USAID policy.

11. I am also deeply troubled by the vagueness of the USAID requirements. I have received no guidance from USAID as to what it means to be opposed to prostitution, although a senior USAID officer has stated to me that sex workers in Southeast Asia should be made to pray before they can be treated for sexually transmitted infections (STI). My own work evaluating the "best practices" in HIV/AIDS projects with sex workers in the Asia Pacific Region leads me to conclude that helping sex workers defend their rights as citizens not to be raped by police, not to be excluded from health services, not to be stigmatized in dozens of ways, as well as providing friendly STI services, legal rights services, educational programs, savings and loan schemes, schooling for their children, and other services, transforms poor, powerless

women into active and effective partners in HIV prevention. Even further, such an approach gives them the means to leave the trade or help their children avoid entering the trade. Given the lack of clarity in the USAID policy and its ideological rather than evidence-based approach, there is a great likelihood that the lessons learned in the last fifteen years will be lost. Those lessons demonstrate that the most effective way to help persons in the sex trade includes accepting them, non-judgmentally, as fellow human beings. Having a policy "opposing prostitution" undermines that relationship of trust. Thus, this policy will not only harm HIV prevention efforts, but prostitution will continue to flourish further underground, away from those who could help develop alternatives for poor women and men.

12. Further, in my own experience, USAID contractors have begun to require my casual workers, such as translators and interviewers on projects, to sign these pledges as well. Beyond the difficulty of translating the meaning of the USAID concepts into other languages such as Khmer and Thai, demanding that such persons sign these clauses is a threatening and damaging requirement. It destroys trust and essentially forces people to be hypocritical in order to be paid for their work.

13. The chill effect has been extensive, especially for several of the larger contracting agencies of USAID. I have witnessed their officers being warned by USAID officers to alter language, cut items out of their websites, hide some of their sex worker interventions, and other pressures that have directly led to the de-funding or the threat of de-funding sex worker projects. This has occurred in Ethiopia, Cambodia, and Thailand. At the present time, despite an HIV prevalence of 75 percent among the sex workers of Addis Ababa, no agency funded by USAID (the largest single funder) can provide proper prevention services for sex workers in Ethiopia. In Papua New Guinea, we were forced to secure AusAID funding to cover literacy and

other empowerment activities for sex workers because the USAID contractor feared such activities would be construed as "promoting prostitution".

14. Compelling me to adopt this policy would also be harmful because I would be viewed as a consultant who stigmatizes vulnerable and marginalized sex workers. Adopting USAID's required policy would disrupt my ability to offer meaningful advice to organizations seeking to assist that population. I know from experience that the challenges of reaching sex workers are great and that the programs that have been most successful in reaching out to sex workers to prevent the spread of HIV have been those that approach sex workers in a non-judgmental fashion designed to address their health and other needs and to build their own skills and self-esteem. International scientific data demonstrate that female sex workers, almost more than any other at-risk group, are very responsive to the promotion of safer sex and quickly become part of the solution, rather than part of the problem. Much of my HIV work is to teach various agencies in different parts of the world how to make this happen. Being forced to sign this policy statement would place my credibility in danger with my clients, as the policy itself contradicts the advice I can offer based on scientific evidence.

15. In addition, the USAID policy prohibits USAID funds from being used to "promote or advocate the legalization of or practice of prostitution or sex-trafficking." In addition to misrepresenting the cross-over of these two phenomena, the policy gives no guidance as to what constitutes promoting the practice of prostitution, except to exclude a narrow range of specific actions, such as providing "necessary pharmaceuticals and commodities" such as condoms. Because working to prevent HIV/AIDS often involves working with sex workers, I do not know what activities will and will not be found, at some point, to have violated that policy. As was pointed out in the letter to President Bush from hundreds of NGOs, this policy has

already resulted in the cancellation of a program in Cambodia that provided English language training classes for people working in the commercial sex sector for fear such programs would be interpreted as "promoting" the practice of prostitution, even though English language skills would have dramatically increased alternative job prospects for those workers. (A copy of the letter to President Bush is attached as Exhibit A to this Declaration.) There are several other examples of USAID contractors defunding sex worker projects simply out of fear that any activities with sex workers will get them into trouble. During my last year (2003) as Senior Advisor for USAID in their Asia and Near East Region, I frequently had to intervene with NGOs that thought they had to drop all sex worker programs and were on the verge of doing so. It was difficult, however, to guarantee these groups that somebody in Washington would not misconstrue their work as "promotion of prostitution" and seek the return of all USAID funds given to the group. The chill effect is such that some local country-level USAID officers have taken it upon themselves to police the local USAID-funded projects, instilling fear and, for the most committed HIV workers, an increasing desire to leave their jobs. I can state this with firm conviction as I very frequently serve as informal "counselor" for staff members of CARE, Family Health International, the International AIDS Alliance, the Policy Project and other smaller NGOs funded by USAID.

16. Thus, even without signing the certification, I believe the vagueness of the USAID policy is harmful to the integrity of my work as a consultant.

Pursuant to 28 U.S.C. § 1746, I swear and affirm, under penalty of perjury, that the foregoing is true and accurate to the best of my knowledge.

*Carol Jenkins*
Dr. Carol Jenkins

DATED this 7 day of August, 2005

# EXHIBIT A

# EXHIBIT A

May 18, 2005


President George W. Bush
The White House
1600 Pennsylvania Avenue NW
Washington, DC 20500

Dear Mr. President:

The undersigned represent a diverse group of public health, human rights, faith-based and community-based organizations. We strongly support the U.S. government's goals of preventing the spread of HIV and ending trafficking in persons worldwide. We are concerned, however, that U.S. anti-HIV/AIDS and anti-trafficking efforts will be severely undermined by policies restricting the range of interventions that can be used to protect the lives and health of women and men in prostitution, and of trafficked persons, the very groups intended as beneficiaries of U.S. efforts.

Current U.S. law requires organizations receiving U.S. global HIV/AIDS and anti-trafficking funds to adopt specific organization-wide positions opposing prostitution.[1] Until recently, these restrictions have been applied to foreign non-governmental organizations receiving U.S. HIV/AIDS and anti-trafficking funds.[2] A September 2004 opinion letter by the U.S. Department of Justice, however, proposes expanding these policies to U.S.-based organizations.[3] Both U.S. AIDS law and anti-trafficking law also bar the use of funds, variously, to "promote, support, or advocate the legalization or practice of prostitution."[4]

Based on the experience of many of our organizations in advocating for the health and human rights of women and men in prostitution, we are deeply concerned that these restrictions will preclude recipients of U.S. funds from using the best practices at their disposal to prevent HIV/AIDS among these populations and to promote the fundamental human rights of all persons. In fact, evidence exists that these restrictions are already undermining promising interventions.

Women and men in prostitution, some of whom have been trafficked, are among the most marginalized persons in any society. The organizations with the most effective anti-AIDS and anti-trafficking strategies build their efforts on a sophisticated understanding of the social and personal dynamics underlying these issues, and start by building trust and credibility among the populations in question. They recognize that it is both possible and often necessary to provide social, legal and health services to men and women in prostitution without judging them, and without adopting positions on issues such as prostitution.[5] They may work to provide persons in prostitution with new skills essential to moving out of the commercial sex sector, to secure the legal rights of men and women in prostitution to be free from violence and discrimination, or to empower them to demand universal condom use, thereby preventing the further spread of HIV infection within and outside this sector.[6] They may also work to prevent people from being trafficked into the sex sector and to assist trafficking victims. Requiring organizations to adopt anti-prostitution policies makes it extremely difficult, if not impossible, to establish the trust necessary to provide services to these hard-to-reach groups.

We are strongly opposed to the current restrictions on working with women and men in prostitution inscribed in law and extended in U.S. HIV/AIDS and anti-trafficking policies. First, and most importantly, these policies run contrary to best practices in public health and will undermine efforts to stem the spread of HIV and human trafficking. For example, the Sonagachi Project in Calcutta, India, has reached more than 30,000 persons working in the commercial sex sector at risk of HIV, in large part through peer-based outreach services. Sonagachi's peer educators work to stop the spread of HIV among women and men in prostitution in part through strategies intended to earn their trust, reduce their social isolation, increase their participation in public life, and confront stigma and discrimination.[7] Sonagachi's work has received strong positive evaluations from both UNAIDS and the World Bank, and has been cited by UNAIDS as a "best-practice" model of working with women and men in prostitution.[8] These initiatives focus on promoting the fundamental human rights and health of persons working in prostitution, but do not equal

1

the *promotion* of prostitution. Yet valuable programs such as those run by Sonagachi and organizations like it are exactly the type threatened by current U.S. laws and policies.

Second, the broad language of the restrictions increases the risk that organizations will self-censor or curtail effective programs for fear of being seen as supporting or promoting prostitution. In fact, the restrictions are already having a chilling effect on work in the field. In Cambodia, for example, NGOs discontinued plans to provide English language training classes for people working in the commercial sex sector for fear such programs would be interpreted as "promoting prostitution."[9] Yet in Phnom Penh alone, the rapid growth of job opportunities in government, in non-governmental organizations, and in the tourist industry makes English language skills a valuable commodity and a means of accessing opportunities outside the sex sector. In Jamaica, health workers working with men and women in prostitution have expressed concern that these restrictions curtail their ability to support the efforts of people working in the commercial sex sector to protect their rights.[10]

We recognize that your goal is to address the dangers associated with prostitution and trafficking in persons. However, we are concerned that these policies will do little to advance this goal, and will instead exacerbate stigma and discrimination against already marginalized groups. Any anti-prostitution declaration by organizations working in the sex sector has the potential to judge and alienate the very people these organizations seek to assist, making it difficult or impossible to provide services or assistance to those at risk. Public statements against prostitution can also fuel the public opprobrium against men and women in prostitution, further driving them underground and away from lifesaving services. It was for these and other reasons that Brazil recently rejected $40 million in U.S. global AIDS money, noting that such restrictions undermined the very programs responsible for Brazil's success in reducing the spread of HIV.[11]

Finally, we are gravely concerned that the potential expansion of these restrictions to U.S.-based groups contradicts the fundamental right to freedom of speech guaranteed in the U.S. Constitution.[12] Requiring domestic organizations with mixed funding to adopt positions consistent with U.S. government policy compels speech, which is an unconstitutional condition on government funding in violation of the First Amendment.[13] While the U.S. government can legally require its funds be used to further government-approved messages,[14] it has not previously compelled U.S. organizations with multiple funding sources to speak explicitly on an issue in compliance with a specific U.S. objective. The courts have long held that the government does not have power to compel a U.S. grantee to pledge allegiance to the government's viewpoint in order to participate in a government program.[15] We also strongly believe that compelling foreign organizations to adopt policies consistent with the government's viewpoint raises important constitutional concerns and undermines the democratic principles for which the United States stands.[16]

Rather than requiring organizations to adopt explicit anti-prostitution policies, the U.S. government could fulfill its goals by permitting organizations that do not have a policy on prostitution to receive U.S. funds. There is bipartisan support in Congress for this solution.[17] The advantage of this approach is that it does not pressure organizations, whether international or domestic, to adopt policies that run contrary to best health-care practices, may have nothing to do with their work or organizational mission, and have the potential to undercut the very purpose of U.S. grants. Such a policy would allow a wide range of organizations to participate in the global struggle against AIDS, while recognizing the importance of freedom of speech and freedom to receive and impart information in promoting the health and well-being of all citizens.

We urge you to act immediately to:

♦ Request that the Department of Justice reconsider its interpretation on the application of the restrictions in the Global AIDS Act of 2003 to domestic grantees, ensuring instead that all programs are consistent with human rights and public health norms and constitutional guarantees of freedom of speech;

♦ Institute the practice of consultation with a broad range of experts in both the HIV/AIDS and trafficking fields before any agency or office issues program directives interpreting U.S. HIV/AIDS

2

and trafficking laws to ensure transparency in policymaking, consistency with U.S. and international human rights law, and the promotion of best practices in public health;

- Work with Congress to amend the TVPRA and the Global AIDS Act of 2003 so that these laws are consistent with U.S. and international human rights law and with best practices in public health.

We share your concerns about the need to stop the spread of HIV worldwide and to address the needs of trafficked persons. We hope, however, that in the future funding will be distributed to organizations based solely upon their demonstrated capacity to prevent the spread of HIV and human trafficking according to best practices in the fields of public health and human rights, to provide treatment for those suffering from AIDS, and to provide services and support to trafficked persons while simultaneously promoting the basic human rights and freedom of speech of all persons.

Sincerely,

**Organizations by Region**

**Africa**
AIDS Law Project, Centre for Applied Legal Studies, Wits University, South Africa
BAOBAB for Women's Human Rights, Lagos, Nigeria
Gays and Lesbians of Zimbabwe, Harare, Zimbabwe
Greater Nelspruit Rape Intervention Program, Mpumalanga, South Africa
International Centre for Reproductive Health and Sexual Rights, Nigeria
National Forum of People Living with HIV/AIDS Networks in Uganda, Kampala, Uganda
Resource Centre Library, Institute of Training and Education for Capacity-building, East London, South Africa
SWEAT (Sex Worker Education and Advocacy Taskforce), Cape Town, South Africa
Youth Empowered to Succeed, Kisumu, Kenya

**Asia and Pacific**
Action for REACH OUT, Hong Kong, China
Alternate Visions, Bangkok, Thailand
Asia Pacific Network of People Living with HIV/AIDS, Bangkok, Thailand
Australian AIDS Fund Incorporated, Melbourne, Australia
Australian Reproductive Health Alliance, Deakin, Canberra, Australia
Center for the Study of Sexualities, National Central University, Chungli, Taiwan
Centre for Feminist Legal Research, New Delhi, India
Delhi Network of People Living with HIV/AIDS, Delhi, India
Durbar Mahila Samanwaya Committee (Sonagachi Project), Kolkata, India
Empowering Women to Fight AIDS in Asia, Islamabad, Pakistan
Family Planning Association of New Zealand, Wellington, New Zealand
Freedom Foundation-India, Centers of Excellence, Substance Abuse & HIV/AIDS, Bangalore, India
Friends of Hope PLWHA NGO, Pokhara, Nepal
HuMaNis Foundation, Mataram, West Nusa Tenggara, Indonesia
International Secretariat of the Global Alliance Against Traffic in Women (GAATW), Bangkok, Thailand
Lawyers Collective HIV/AIDS Unit, New Delhi, India
MTAAG+ (Positive Malaysian Treatment Access & Advocacy Group), Malaysia
Nari Unnayan Shakti (Women's Power for Development), Dhaka, Bangladesh
National Association of People Living with HIV/AIDS-Australia, Australia
National Association of PLHWHA in Nepal, Kathmandu, Nepal
Network of Sex Work Projects, Hong Kong
Pelangi Community Foundation, Batu Caves, Malaysia
RISE, Peshawar, Pakistan
SANGRAM (Sampada Grameen Mahila Sanstha), Sangli, India
Solidaritas Perempuan (Women Solidarity for Human Rights), Jakarta, Indonesia

3

TARSHI (Talking About Reproductive and Sexual Health Issues), New Delhi, India
TREAT Pokhara, Nepal
Zi Teng, Hong Kong, China

**Europe/Central Asia**

AIDS Action Europe, the Pan European NGO Partnership on HIV and AIDS, Amsterdam, The Netherlands
AIDS Foundation East-West, Moscow, Russia
AIDS Information & Support Center, Tallinn, Estonia
All-Ukrainian Network of People Living with HIV/AIDS, Kiev, Ukraine
Anti Trafficking Center, Belgrade, Serbia
Child in Need Institute International, Italy
CHOICE for Youth and Sexuality, The Netherlands
Comitato per i Diritti Civili delle Prostitute Onlus, Pordenone, Italy
Droits et libertés dans les Eglises, France
European AIDS Treatment Group, Brussels, Belgium
Foundation La Strada, Programme for Prevention of Trafficking in Central and Eastern Europe, Bosnia and Herzegovina
GAT (Grupo Português de Activistas sobre Tratamentos de VIH/SIDA), Lisbon, Portugal
GNP+ (Global Network of People living with HIV/AIDS), Amsterdam, The Netherlands
Grupo de Trabajo sobre Tratamientos del VIH, Barcelona, Spain
HDN (Health & Development Networks), Dublin, Ireland
Health and Social Development Foundation, Sofia, Bulgaria
Health Education Association NGO, Yerevan, Armenia
Hope, Sofia, Bulgaria
Humanist Institute for Co-operation with Developing Countries, The Hague, Netherlands
International Community of Women living with HIV/AIDS, London, United Kingdom
International Drug Policy Consortium, London, United Kingdom
International Planned Parenthood Federation, London, United Kingdom
Irish Family Planning Association, Dublin, Ireland
John Mordaunt Trust, London, United Kingdom
La Strada Czech Republic, Prague, Czech Republic
Lesbian and Gay Federation in Germany, Cologne, Germany
NGO "TRUST," Skopje, Republic of Macedonia
Russian Harm Reduction Network, Moscow, Russia
Until the Violence Stops, London, United Kingdom
We Are Church-YOUTH, Cologne & Munich, Germany
Women for Women's Human Rights - New Ways, Istanbul, Turkey
Women in Black, Belgrade, Serbia
World Population Foundation, Hilversum, Netherlands

**Latin America**

Accion Ciudadana Contra el SIDA, Caracas, Venezuela
Agua Buena Human Rights Association, San Jose, Costa Rica
Católicas por el Derecho a Decidir, Córdoba, Argentina
Ecuadorian Coalition of People Living with HIV/AIDS, Ecuador
Foundation for Studies and Research on Women, Argentina
Huellas+, Quito, Ecuador
Intercambios Asociación Civil, Buenos Aires, Argentina
International Council of Jewish Women, Montevideo, Uruguay
Latin American and Caribbean Council of AIDS Service Organizations, Caracas, Venezuela
Red Argentina de Reducción de Daños (Argentinean Harm Reduction Network), Buenos Aires, Argentina

**Middle East/North Africa**

Egyptian Initiative for Personal Rights, Egypt
Persepolis Harm Reduction NGO, Tehran, Iran

**North America**

ACT UP East Bay, Oakland, CA, USA
ACT UP New York, NY, USA
Action Canada for Population and Development, Ottawa, ON, Canada
Africa Action, Washington, DC, USA
AIDS Action Council, Washington, DC, USA
AIDS Foundation of Chicago, Chicago IL, USA
AIDS Project Los Angeles, CA, USA
AIDS Taskforce of Greater Cleveland, Cleveland, OH, USA

4

American Academy of HIV Medicine, Washington, DC, USA
American Humanist Association, Washington, DC, USA
American Jewish World Service, New York, NY, USA
amfAR (The Foundation for AIDS Research), New York, NY, USA
Amnesty International USA, New York, NY, USA
Best Practices Policy Project, Washington, DC, USA
Boston Consortium for Gender, Security and Human Rights, Boston, MA, USA
Canadian HIV/AIDS Legal Network, Montreal, Canada
Canadian Research Institute for the Advancement of Women, Ottawa, Canada
Canadian Society for International Health, Ottawa, Canada
Catholics for a Free Choice, Washington, DC, USA
Catholics for a Free Choice-Canada, Peterborough, Ontario, Canada
Catholics Speak Out, Quixote Center, Brentwood, MD, USA
Center for Health and Gender Equity, Takoma Park, MD, USA
Center for Reproductive Rights, New York, NY, USA
Center for Women Policy Studies, Washington, DC, USA
Center for Women's Global Leadership, New Brunswick, NJ, USA
Central Conference of American Rabbis, New York, NY, USA
CHAMP (Community HIV/AIDS Mobilization Project), New York, NY, USA
Chicago Recovery Alliance, Chicago IL, USA
Choice USA, Washington, DC, USA
Columbia University Social Intervention Group, New York, NY, USA
Drug Overdose Prevention and Education Project, San Francisco, CA, USA
Episcopal Church, USA
Eve & The Snake, New York, USA and Brasilia, Brazil
Family Care International, New York, USA
Feminist Majority Foundation, Arlington, VA, USA
Foundation for Integrative AIDS Research, Brooklyn, NY, USA
Gay Men's Health Crisis, New York, NY, USA
General Board of Church and Society, United Methodist Church, Washington, DC, USA
Global AIDS Alliance, Washington, DC, USA
Global Campaign for Microbicides, Washington, DC, USA
Global Fund for Women, San Francisco, CA, USA
Global Philanthropy Partnership, Chicago, IL, USA
Global Rights, Washington, DC, USA
GW Student Global AIDS Campaign, Washington DC, USA
Gynuity Health Projects, New York, NY, USA
Harm Reduction Coalition, New York, NY, USA
Harm Reduction Project, Denver / Salt Lake City, USA
Health Equity Project, New York, NY, USA
HealthGAP (Global Access Project), New York, NY, USA
Hepatitis, AIDS, Research Trust, Florence, CO, USA
HIV Advocacy Council of Oregon and SW Washington, Portland, OR, USA
HIV Resource Center, Roseburg, OR, USA
Huairou Commission, Brooklyn, NY, USA
Human Rights Watch, New York, NY, USA
Institute for Community Research, Hartford, CT, USA
International Council of AIDS Service Organizations, Toronto, ON, USA
International Gay and Lesbian Human Rights Commission, New York, NY, USA
International Planned Parenthood Federation, Western Hemisphere Region, New York, NY, USA
International Rescue Committee, Washington, DC, USA
International Sex Worker Foundation for Art, Culture and Education, Panorama City, CA, USA
International Women's Health Coalition, New York, NY, USA
Ipas, Chapel Hill, NC, USA and 11 country offices worldwide
Lambda Legal Defense & Education Fund, Inc., New York, NY, USA
MADRE, An International Women's Human Rights Organization, New York, NY, USA
National Asian Pacific American Women's Forum, Washington DC, USA
National Association of Nurse Practitioners in Women's Health (NPWH), Washington, DC, USA
National Association of People with AIDS (NAPWA-US), Silver Spring, MD, USA
National Coalition of American Nuns, USA
National Council of Jewish Women, New York, NY, USA
National Family Planning and Reproductive Health Association, Washington, DC, USA
PATH, USA
Project Inform, San Francisco, CA, USA
Religious Consultation on Population, Reproductive Health and Ethics, Milwaukee, WI, USA

5

Sakyadhita International Association of Buddhist Women, Kailua, HI, USA
Search For A Cure, Boston, MA, USA
Sex Workers Project at the Urban Justice Center, New York, NY, USA
Sexuality Information and Education Council of the United States, New York, NY, USA
SisterSong Women of Color Reproductive Health Collective, Atlanta, GA, USA
Street Works, Nashville, TN, USA
Student Campaign for Child Survival, Washington, DC, USA
Student Global AIDS Campaign, Washington, DC, USA
Treatment Action Group (TAG), New York, NY, USA
Union for Reform Judaism, New York, NY, USA
Unitarian Universalist Association of Congregations, USA
Washington Office on Africa, Washington, DC, USA
WATER (Women's Alliance for Theology, Ethics and Ritual), Silver Spring, MD, USA
WEDO (Women's Environment & Development Organization), New York, NY, USA
Women's Commission for Refugee Women and Children, New York, NY, USA
Women's World Organization for Rights, Literature and Development (Women's WORLD), New York, NY, USA

**Individuals** (*Note: Institutional affiliation is provided for identification purposes only)

Congresswoman Betty McCollum, U.S. House of Representatives, 4th district of Minnesota
Moisés Agosto, Health Care Consultant, member of the New York City AIDS Commission, community member of AIDS Research Advisory Council of the Division of AIDS of the NIAID, USA
Avni Amin, Ph.D., World Health Organization, Geneva, Switzerland
Noor Ayesha, Electoral Support Officer, United Nations Volunteers, Liberia
Phil Bossenbroek, Peer Counselor/ Southern Arizona AIDS Foundation, Member Social Justice Committee/ St Marks Presbyterian Church, Tucson, AZ, USA
Lynn Buffington, Beavercreek, OH, USA
Therese Burstow, Needle and Syringe Program Policy Officer, Northern Territory AIDS and Hepatitis Council, Australia
Dr. Wendy Chapkis, Associate Professor of Women's Studies and Sociology, University of Southern Maine, USA
Helena Chiquele, Project Officer of the Joint Oxfam Advocacy Program, Mozambique
Claire Christie, Reproductive Health Program Advisor, CARE Cambodia, Phnom Penh, Cambodia
Judith Collins, Health Consultant, Chapel Hill, NC, USA
Susie Daniel, Cooperante Tecnica - VIH/SIDA, Cooperacion Internacional para el Desarrollo, Republica Dominicana
Lila Elman, Public Health Programs Assistant, Open Society Institute, New York City, USA
Prim. d-r Slavica Gajdadzis-Knezevik, psychiatrist and Director, Center for prevention and treatment of drug addiction, Psychiatric Hospital "Skopje", Republic of Macedonia
Raquel Gandelsman, Secretaria de Saúde do Recife, Programa de Redução de Danos no Consumo de Álcool, Fumo e Outras Drogas, Prefeitura da Cidade do Recife, Brazil
Tina Gianoulis, member Women in Black, Bainbridge Island; Dyke Community Activists, WA, USA
Janice Gutman, member Women in Black, Bainbridge Island; Dyke Community Activists; Suquamish-Ollalla Neighbors Association, WA, USA
Emma Harvey, Project Coordinator, International Human Rights Exchange, Cape Town, South Africa
Geoff Heaviside, Convenor - Brimbank Community Initiatives Inc, Secretary - International Centre for Health Equity Inc, Member - Australasian Society for HIV Medicine Inc, Victoria. Australia
Robert Heimer, Ph.D., Center for Interdisciplinary Research on AIDS, Yale University School of Medicine, New Haven, CT, USA
Chen Hong, Program Manager, Population Services International/Yunnan, China
Alice M. Miller, Assistant Professor, Clinical Public Health, Columbia University School of Public Health, New York, NY, USA
Sandhya Jain, New Delhi, India
Philippa Jungova Lawson, HIV/AIDS specialist, active member of International Community of Women Living with HIV/AIDS, Glastonbury, CT, USA
Anne Ruedisili Langdji, Primary Health Care Project Coordinator, Eglise Evangelique Lutherienne du Senegal

Teresa Lanza M., Coordinator of Catholics For the Right to Decide/Bolivia, La Paz, Bolivia
I.S. Levine, Chairman, Board of Directors, Adult Industry Medical Healthcare Foundation, Los Angeles, CA, USA
Professor Ann Lucas, San Jose State University, San Jose, CA, USA
Alexandra Lutnick, Research Coordinator, St. James Infirmary, Staff Research Associate II, University of California San Francisco, San Francisco, Ca, USA
Anna Marsiana, Working Group Committee, Asian Women Resource Centre for Culture and Theology, Kuala Lumpur, Malaysia
Sanja Milivojevic, Monash University, Melbourne, Australia
Veronica Monet, Sex Educator and the author of Sex Secrets of Escorts (Alpha Books 2005), member of SWOP-USA, Woodside, Ca, USA
Elena Obieta, MD, Infectious Diseases, Hospital de Boulogne and Fundacion SPES, Buenos Aires, Argentina
Julia O'Connell Davidson, Professor, School of Sociology & Social Policy, University of Nottingham, Nottingham, United Kingdom
Prisci Orozovich, MPh, HIV/AIDS Researcher, University of California at San Diego, USA
Rosalind Petchesky, Women's Environment & Development Organization, Distinguished Professor, Hunter College & the Graduate Center, City University of New York, USA

Edith Rubinstein, Women in Black, Burssels, Belgium
Larissa Sandy, Graduate Scholar/Research Assistant, Gender Relations Centre, Research School of Pacific and Asian Studies, Australian National University, Canberra, Australia
Dr. Jennifer Suchland, Assistant Professor, Southwestern University, Georgetown, Texas, USA
Celina Schocken, International Affairs Fellow with the Council on Foreign Relations, USA
Brooke Slick, WV State Director, AIDS Watch/ Campaign to End AIDS, Shepherdstown, WV, USA
Laurie Sylla, Director, Connecticut AIDS Education and Training Center, Yale School of Nursing, New Haven, CT, USA
Dechen Tsering, Program Officer, Asia and Oceania, Global Fund for Women, San Francisco, CA, USA
Stephanie Urdang, Montclair, NJ, USA
Wei V. Wang, Wellesley College, Wellesley, MA, USA
Patricia Weisenfeld, Asia Regional Program Manager, The Female Health Foundation, Chiang Mai, Thailand
Patricia Whelehan, Ph.D., medical anthropologist, HIV/AIDS education coordinator and counselor, NY, USA
Mohammad Ziaul Ahsan, Director, Program & Finance, Organization for Social Development of Unemployed Youth, Dhaka, Bangladesh

Cc:
    Alex M. Azar II, General Counsel, U.S. Department of Health and Human Services
    Hon. Joseph Biden, Ranking Minority Member, Committee on Foreign Relations, U.S. Senate
    Hon. Bill Frist, Majority Leader, U.S. Senate
    Hon. Alberto R. Gonzales, Attorney General, U.S. Department of Justice
    Kent Hill, Acting Assistant Administrator, USAID
    Hon. Henry Hyde, Chair, Committee on International Relations, U.S. House of Representatives
    Hon. Tom Lantos, Ranking Minority Member, Committee on International Relations, U.S. House of Representatives
    Hon. Patrick Leahy, U.S. Senate
    Hon. Richard Lugar, Chair, Committee on Foreign Relations, U.S. Senate

Ambassador John Miller, Office to Monitor and Combat Trafficking in Persons, U.S. Department of State
Andrew Natsios, Administrator, USAID
Hon. Chris Smith, Member, Committee on International Relations, U.S. House of Representatives
Ambassador Randall Tobias, Global AIDS Coordinator, Department of State

---

[1] See United States Leadership against HIV/AIDS, Tuberculosis, and Malaria Act of 2003, 22 U.S.C. § 7631(f) (2003) [hereinafter, Global AIDS Act]; Trafficking Victims Protection Reauthorization Act of 2003, 22 U.S.C. § 7110(g) (2) (2003) [hereinafter, TVPRA].

[2] See, e.g., Centers for Disease Control and Prevention, U.S. Dep't of Health and Human Svcs., Rapid Expansion of HIV/AIDS Activities by National Ivorian Nongovernmental Organizations and Associations Serving Highly Vulnerable Populations in Cote d'Ivoire Under the President's Emergency Plan for AIDS Relief, Funding Opportunity No. 04199, Jul. 2004, at 9 (stating, "[A]ny foreign recipient must have a policy explicitly opposing, in its activities outside the United States, prostitution and sex trafficking..."). See also Bureau of Administration, U.S. Dep't of State, Anti-Trafficking in Persons, Funding Opportunity No. DOS-GTIP, Mar. 2005, at 11-12 (stating, "U.S. law... prohibits such funds from being used to implement any program that targets victims of severe forms of trafficking in persons involving sex trafficking by an organization that has not stated in either a grant application, a grant agreement, or both, that it does not promote, support, or advocate the legalization or practice of prostitution. It is the responsibility of the primary grantee to ensure these criteria are met by its sub-grantees").

[3] Letter from Daniel Levin, Acting Assistant Attorney General, U.S. Dep't of Justice, to Alex M. Azar II, General Counsel, U.S. Dep't of Health and Human Svcs. (Sept. 20, 2004).

[4] See Global AIDS Act, 22 U.S.C. § 7631(e) (barring use of funds to "promote or advocate the legalization or practice of prostitution or sex trafficking"); TVPRA, 22 U.S.C. § 7110(g) (1) (barring use of funds to "promote, support, or advocate the legalization or practice of prostitution").

[5] See WORLD HEALTH ORG. (WHO), TOOLKIT FOR TARGETED HIV/AIDS PREVENTION AND CARE IN SEX WORK SETTINGS (2004), available at http://www.who.int/hiv/pub/prev_care/swtoolkit/en/.

[6] See id. at 6 (noting "The diversity of sex work settings requires flexible, locally adapted responses. However, experience shows that HIV prevention in sex work settings should work toward three main outcomes: 1. Increased condom use and safer sex 2. Increased sex worker involvement and control over working and social conditions 3. Reduced STI burden").

[7] See UNAIDS, Female Sex Worker HIV Prevention Projects: Lessons Learnt from Papua New Guinea, India and Bangladesh, UNAIDS BEST PRACTICE COLLECTION, Nov. 2000, at 57-90.

[8] See id.

[9] Interview by Alice Miller, Columbia Univ. Law School, with Elaine Pearson, Anti-Slavery International, Bangkok, Thailand (July 2004).

[10] Interview by Human Rights Watch with Jamaican health worker, Kingston, Jamaica (June 2004).

[11] See Michael M. Phillips and Matt Moffett, Brazil Refuses U.S. Aids Funds, Rejects Conditions, WALL ST. J., May 2, 2005, at A3.

[12] See U.S. CONST. Amend. I.

[13] See FCC v. League of Women Voters, 468 U.S. 364 (1984). See also Regan v. Taxation w. Representation of Washington, 461 U.S. 540 (1983) (holding permissible speech restrictions on a government subsidy because other, non-federal contributions could be used to fund prohibited speech).

[14] See Rust v. Sullivan, 500 U.S. 173, 196 (1991) (holding that the Government may make a value judgment, implement that judgment by the allocation of public funds, and "leave the grantee unfettered in its other activities" funded by other sources).

[15] See West Virginia State Bd. of Educ. v. Barnette, 319 U.S. 624 (1943) (invalidating a requirement that children pledge allegiance to the U.S. flag in order to attend public school). See also Speiser v. Randall, 357 U.S. 513 (1958) (holding unconstitutional a requirement that receipt of a tax exemption was contingent on the filing of a loyalty oath to the U.S. Government); Wooley v. Maynard, 430 U.S. 705, 715 (1977), citing Barnette (holding that forcing an individual to be "an instrument for fostering public adherence to an ideological point of view he finds unacceptable . . . 'invades the sphere of intellect and spirit which it is the purpose of the First Amendment . . . to reserve from all official control'").

[16] See DKT Memorial Fund Ltd. v. Agency for Intern. Dev't, 887 F.2d 275 (D.C. Cir. 1989) (Ginsberg, J., dissenting).

[17] See 108 Cong. Rec. H10287 (2003) (colloquy of Reps. Chris Smith and Tom Lantos during the reauthorization of the TVRPA). Congressman Smith, Republican Vice-Chair of the House International Relations Committee (HIRC),

8

and Congressman Lantos, Ranking Democrat Member on the HIRC, agreed on the proper interpretation of the TVPRA funding restriction related to sex trafficking and prostitution. According to Congressman Smith," an organization can satisfy the prohibition…if it states in a grant application, a grant agreement, or both that it does not promote, support, or advocate such actions since it has no policy regarding this issue." *See also* 149 Cong. Rec. S6457 (2003) (colloquy of Senator Leahy and Senator Frist during the authorization of the Global AIDS Act) Senator Frist, President Pro Tempore of the Senate, and Senator Leahy, Ranking Democrat Member on the Judiciary Committee, agreed on the proper interpretation of the Global AIDS Act funding restriction related to sex trafficking and prostitution. Senator Frist stated that "a statement in the contract or grant agreement between the U.S. Government and such organization that the organization is opposed the practices of prostitution and sex trafficking because of the psychological and physical risks they pose for women . . . would satisfy the intent of the provision."